**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10cv376-W-2
(3:07cr79-W)**

| | |
|---|---|
| PATRICK SCHWENKE, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____) | **O R D E R** |

**THIS MATTER** is before the Court upon Petitioner's Motion to Vacate, filed August 12, 2010 (Doc. No. 1); and Respondent's Motion for Summary Judgment, filed October 27, 2010 (Doc. No. 11).

## I. FACTUAL AND PROCEDURAL HISTORY

On March 29, 2007, Petitioner was named in a Bill of Indictment that charged him (and three other persons) with conspiracy to possess with intent to distribute at least 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846 (Count One); possession with intent to distribute at least 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(b) (Count Two); possession with intent to distribute an unspecified quantity of marijuana in violation of 21 U.S.C. §§ 841(A)(1) and 841(b)(1)(C) (Count Three); using and carrying a firearm during and in relation to the drug trafficking crimes charged in Counts One and Two, and wit possession of that firearm in furtherance of said drug trafficking crimes, all in violation of 18 U.S.C. § 924(c) (Count Four); and being a felon in possession of a firearm in violation of

18 U.S.C. § 922(g)(1) (Count Six) (Case No. 3:07cr79, Doc. No. 4)[1]. On May 10, 2007, the Government filed an Information pursuant to 21 U.S.C. § 851, placing Petitioner on notice that his 1998 California conviction for felonious possession with intent to distribute marijuana could subject him to enhanced sentencing in this case. (Id., Doc. No. 31).

On June 19, 2007, the parties filed their Plea Agreement. (Id., Doc. No. 38). Such Agreement memorializes Petitioner's promise to plead guilty to the conspiracy offense charged under Count One and the § 924(c) firearm offense charged under Count Four as set forth in the Superceding Indictment, in exchange for the Government's promise to dismiss the three remaining charges against him. (Id. at 1). The Agreement further reflects Petitioner's acknowledgments that notwithstanding the dismissal of the other charges, the Court could consider those counts as relevant conduct for sentencing purposes; that he was facing a statutory <u>minimum</u> of 10 years up to life imprisonment under Count One and a consecutive statutory mandatory minimum term of five years imprisonment under Count Four. (Id. at 1-2). The Agreement also contains Petitioner's stipulations that the amount of marijuana that was known to him or reasonably foreseeable by him was in excess of 1,000 kilograms; and that the corresponding base offense level for that amount of drugs was 32. (Id. at 2). In addition, the Agreement reflects Petitioner's acknowledgment that the a sentence within the applicable range under the U.S. Sentencing Guidelines (hereinafter "Guidelines") would be appropriate, and it sets forth his waiver of his rights to seek a departure from that range, or to directly or collaterally challenge his convictions or sentences on any grounds except ineffective assistance of counsel

---

[1] On April 25, 2007, the Government filed a Superseding Bill of Indictment naming three additional defendants in the case. (Id., Doc. No. 21). On June 27, 2007, the Government filed a Second Superseding Bill of Indictment naming four additional defendants and increasing the amount of marijuana involved in the conspiracy charged under Count One from at least 100 to at least 1,000 kilograms. (Id., Doc. No. 44).

and/or prosecutorial misconduct. (Id. at 3 and 6). Last, the Plea Agreement reflects Petitioner's stipulations that there was a factual basis to support his guilty pleas, and that the Court could rely upon the offense conduct described in his Petitioner's Pre-Sentence Report (hereinafter "PSR") to further establish the factual basis for his pleas. (Id. at 5).

Also on June 19, 2007, Petitioner and defense counsel appeared before the Court for his Plea and Rule 11 Hearing. On that occasion, the Court engaged Petitioner in its standard, lengthy colloquy to ensure that his pleas were being freely and intelligently tendered. (Id., Doc. No. 21). Petitioner's responses to the Court's numerous questions established, inter alia, that he had received a copy of the Indictment, had discussed its contents with his attorney, and he understood the charges along with their elements and corresponding penalties. (Id. at 1-2). Said answers established that Petitioner had been given sufficient time to discuss possible defenses to the charges with counsel; and that he and counsel had discussed the Guidelines and how the Court might apply them to his case. (Id. at 1-2 and 4). Petitioner's answers further established his understanding of the terms of his Plea Agreement, including the rights he was relinquishing by virtue of the waiver provision set forth therein, and that if he received a sentence that was more severe than he was expecting, he still would have been bound by his pleas and would not have had the right to withdraw them. (Id. at 2-3).

Petitioner's answers also established that no one had threatened, intimidated or forced him to enter his guilty pleas, and no one had made him any promises of leniency in order to induce those pleas. (Id. at 3). Petitioner indicated that he was tendering his guilty pleas because he was guilty of the subject charges, he wanted to plead guilty, and he wanted the Court to accept his pleas. (Id. at 1 and 3). Furthermore, Petitioner's answers established that he was satisfied with the services of his attorney. (Id. at 4). In fact, Petitioner told the Court that his

3

counsel had "been there when [Petitioner] needed him. He's been great." (Id.). Last, the record reflects that Petitioner remained silent when his attorney affirmed to the Court that he had reviewed the terms of the Plea Agreement with Petitioner and was satisfied that Petitioner understood those matters and knew what he was doing. (Id. at 5). Consequently, after considering all of Petitioner's answers, the Court determined that his guilty pleas were being knowingly and voluntarily tendered, and accepted the pleas. (Id.).

On February 24, 2009, the Government filed a Motion for a Downward Departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). (Id., Doc. No. 272 at 1). Such Motion reported Petitioner's substantial assistance and asked the Court to depart from a range of 97 to 121 months on Count One (based upon an adjusted offense level of 29 and criminal history category II) down to total offense level 15 with a recommended sentence of 21 months under Count One and a consecutive term of five years' imprisonment under Count Four. (Id. at 2-5).

On February 25, 2009, the Court held Petitioner's Factual Basis and Sentencing Hearing. At the outset of that proceeding, Petitioner told the Court that he recalled the sworn declarations that he previously had made during his Plea and Rule 11 proceeding; and that if the Court then had asked him those questions, his answers would have been the same. (Id., Doc. No. 320: Sentencing Transcript at 2-3(hereinafter "Sent'g. Tr.")). Petitioner further reiterated that he, in fact, was guilty of both the conspiracy and firearm charges. (Sent'g. Tr. at 4). Accordingly, the Court found, on the basis of Petitioner's representations, that his pleas were knowingly and voluntarily made, and the Court affirmed acceptance of those pleas. (Sent'g. Tr. at 4-5). Also, based upon Petitioner's stipulation, the Court found that the information in the PSR along with Petitioner's guilty pleas and his admissions established a factual basis for the entry of those guilty pleas. (Sent'g. Tr. at 5).

Next, the Court adopted the PSR's calculations setting Petitioner's total offense level at 29, his Criminal History Category at II and yielding a range of 120 to 121 months imprisonment on Count One plus a five-year consecutive term under Count Four. (Sent'g. Tr. at 6-7). The Government recounted Petitioner's early and significant acts of cooperation, defense counsel reported several additional debriefing sessions which Petitioner underwent and noted that the firearm involved in Count Four was an unloaded, dusty Mossburg shotgun. (Sent'g. Tr. at 7-12). The Court granted the Government's Motion for a Downward Departure. (Sent'g. Tr. at 7- 12).

Petitioner then apologized, expressed remorse for what he had done and told the Court that he had turned his life around while on pre-trial release over the prior two years. (Sent'g. Tr. at 13). Notably, however, Petitioner made no mention of any concerns about counsel, nor did he claim that he was innocent to the subject charge. In addition, Petitioner's wife, daughter and son asked for leniency, told the Court that Petitioner is a good person, a wonderful grandfather, and a supportive spouse and father. (Sent'g. Tr. at 13-15). Ultimately, the Court departed down to a term of 18 months' imprisonment on Count One and 60 months' imprisonment, consecutive, on Count Four. (Sent'g. Tr. at 21). At the conclusion of the proceeding, the Court explained Petitioner's appellate rights to him. (Sent'g. Tr. at 24-25).

On June 11, 2009, Petitioner, acting pro-se, filed a Motion to Vacate under 28 U.S.C. § 2255 asserting, inter alia, that he was subjected to ineffective assistance of counsel by virtue of counsel's alleged failure to consult with him concerning the advantages and disadvantages of a direct appeal. (Case No. 3:09cv237-W-03, Doc. No. 1). Out of an abundance of caution, on June 15, 2009, the Court entered an Order granting Petitioner's Motion to Vacate and subsequently re-entered its Judgment in order to allow Petitioner to timely file an appeal. (Id., Doc. No. 2).

5

On appeal, Petitioner argued that this Court lacked a factual basis for accepting his guilty plea to the § 924(c) charge, and that he is innocent of that charge. United States v. Schwenke, 363 F. App'x 259, 260 (4th Cir. Jan. 26, 2010). However, after acknowledging that it was able to reach the merits of Petitioner's claim only because the Government was not enforcing its waiver provision, the Court of Appeals rejected Petitioner's allegations. Id. at 261. In particular, that Court determined that this Court properly had relied upon Petitioner's stipulations of guilt, and that Petitioner had never asserted to this Court that he possessed the shotgun for any reason other than to further his drug conspiracy. Id. Therefore, the Court of Appeals affirmed this Court's Judgment upon a conclusion that the Court did not err in accepting his guilty plea to the § 924(c) charge. Id.

Consequently, on August 12, 2010, Petitioner, through habeas counsel, filed the instant Motion to Vacate under 28 U.S.C. § 2255 raising three claims for relief. (Doc. No. 1). Taking them out of order, habeas counsel claims that this Court erred because there was no factual basis to support the § 924(c) charge. (Id. at 9. Habeas counsel also claims that Petitioner is actually innocent of that charge. (Id. at 10). Last, habeas counsel argues that Petitioner was subjected to ineffective assistance of trial counsel on the basis of counsel's alleged gross misrepresentation that Count Four would be dropped at sentencing, his failure to conduct legal research and investigation to reveal the absence of a factual basis for Count Four, and his failure to conduct adequate plea negotiations to secure a plea agreement that did not require a plea to Count Four. (Id. at 9). Counsel filed Affidavits from Petitioner and his wife in purported support of the Motion to Vacate. (Doc. No. 1-8 at 13-17).

On October 27, 2010, Respondent filed its Answer in opposition to Petitioner's Motion. Respondent contends that Petitioner is not entitled to any relief on his Motion to Vacate. (Doc.

No. 6 at 10 - 24). Therefore, Respondent has filed a Motion for Summary Judgment (Doc. No. 11) seeking a summary dismissal of this action along with supporting documentation, including an Affidavit from trial counsel. (Doc. Nos. 7- 10).

On November 9, 2010, habeas counsel filed a Motion seeking an extension of time in which to file responses to Respondent's Answer and Motion For Summary Judgment. (Doc. No. 13). On November 17, 2010, the Court entered an Order granting counsel's Motion and giving him, just as he requested, up to January 15, 2011, in which to file his responses. (Doc. No. 14). Notwithstanding that extension, more than two months have passed since the expiration of Petitioner's filing deadline, yet no responses have been filed. Nor has either counsel or Petitioner sought an additional extension of time. Thus, the Court finds that the parties' Motions now are ripe for review.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment a matter of law." Fed. R. Civ. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, and answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must

7

present sufficient evidence from which "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The Court has reviewed Respondent's Motion for Summary Judgment as well as the entire record of this case and has concluded that Petitioner's Motion to Vacate must be denied for the reasons stated in Respondent's Motion and for the further reasons stated herein.

### III. DISCUSSION

**A.     Petitioner's challenges to his firearm conviction are procedurally barred**.

Petitioner's first and third claims challenge his § 924(c) conviction under his assertions that the Court erred in accepting his guilty plea because there was no factual basis for such plea; and that he is actually innocent of that offense. (Doc. No. 1 at 9-12). As Petitioner concedes and Respondent correctly notes, Petitioner's direct appeal argued that "[t]he Court did not have a factual basis for accepting a guilty plea as to Count 4" and "he is innocent of Count 4 . . . even though his plea agreement required him to plead guilty to it." (Doc. No. 1 at 9 and Doc. No. 6 at 22). Notably, the Fourth Circuit expressly rejected the first allegation and implicitly rejected the second by its findings that this Court properly relied upon stipulated facts to support his plea, and Petitioner had not asserted to the Court that he possessed the firearm for any reason other than in furtherance of the subject conspiracy. Therefore, the Court of Appeals concluded that

8

this Court properly accepted Petitioner's plea to the § 924(c) charge. Schwenke, supra, 363 F. App'x at 260-61. Inasmuch as Petitioner has failed to point to an intervening change in law that would entitle him to re-litigate these issue, his allegations that there was no factual basis for his firearm conviction and that he is actually innocent of that offense are foreclosed by the Fourth Circuit's prior decision. United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (the "law of the case" doctrine forecloses re-litigation of issues expressly or impliedly decided by the appellate court); Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976) (absent an intervening change in law, issues decided on direct appeal may not be re-litigated in habeas case).

**B.     Petitioner's claim of ineffective assistance of counsel is factually and legally baseless**.

Petitioner alleges that counsel was ineffective for grossly misrepresenting to him that the § 924(c) charge would be dropped at sentencing, for failing to conduct basic legal research and investigation to discover that there was no factual basis for the firearm charge in Count 4, and for failing to conduct adequate plea negotiations in order to secure an agreement that would not have included the § 924(c) charge. (Doc. No. 1 at 9-10). Respondent argues that Petitioner's allegations against counsel are belied by the record evidence, including his own expressions of satisfaction with counsel; that, counsel did not perform deficiently; and, in any event, that Petitioner has failed to show any resulting prejudice from the alleged errors. (Doc. No. 6 at 22). Petitioner has not responded to Respondent's arguments.

To establish a claim of ineffective assistance of counsel, a petitioner must show both that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S.

9

668, 687-91 (1984); see also Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). In measuring that performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. Thus, the Court must be "highly deferential in scrutinizing [the attorney's] performance and must filter the distorting effects of hindsight from [its] analysis." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).

A petitioner who alleges ineffective assistance of counsel following the entry of a guilty plea has a slightly different burden to meet. See, e.g., Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In such a situation, the U.S. Supreme Court recently explained that the petitioner must show that a "decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010). In other words, the petitioner "must show that but for the assertedly ineffective assistance, a reasonable defendant would have insisted on proceeding to trial." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing Hill, 474 U.S. at 59). When evaluating post-guilty plea claims of ineffective assistance of counsel, statements previously made under oath, particularly those made during a Rule 11 proceeding which affirm an understanding of the proceedings and satisfaction with counsel, are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). Indeed, such statements "constitute a formidable barrier" to their subsequent attack. Blackledge, 431 U.S. at 73-74. In short, once a trial court conducts a Rule 11 colloquy and finds that the plea is being knowingly and voluntarily tendered, absent compelling reasons to the contrary, the validity of the plea and the petitioner's corresponding responses are deemed to be conclusively established. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d 167 (4th Cir. 1981).

Last concerning claims of ineffectiveness, the law is clear that it is the petitioner who "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 725 F.2d 1425, 1430-31 (4th Cir. 1983)). In the event that the petitioner fails to meet this obligation, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290.

### 1. Petitioner's allegation that counsel made material misrepresentations is belied by the record evidence.

Petitioner through his counsel alleges that trial counsel misrepresented that the § 924(c) charge would be dropped at sentencing and that Petitioner would receive a probationary sentence, thereby inducing him to plead guilty to that charge. (Doc. No. 1 at 13). However, as Respondent contends, these self-serving allegations do not entitle Petitioner to any relief.

First, although Petitioner claims that counsel induced him to plead guilty to the § 924(c) charge by misrepresenting to him that the subject charge would be dropped at sentencing, his Affidavit makes absolutely no mention of any such representation from counsel. (Doc. No. 1-8 at 13-14). On the contrary, Petitioner's Affidavit states that notwithstanding Petitioner's claims of innocence, counsel advised him that he was guilty of the charge and that if he refused to accept the terms of the Government's plea offer, "the deal was off." (Id. at 13).

Second, and not surprisingly, trial counsel's Affidavit specifically denies that he made any such representations to Petitioner. (Doc. No. 10). Furthermore, counsel reports that Petitioner never denied his guilt of the § 924(c) charge, and never stated that he wanted counsel to object to that charge. (Id.).

Third, as the Court previously noted, the Plea Agreement that Petitioner signed clearly reports Petitioner's understanding that he was pleading guilty to the § 924(c) charge; that such

offense carries a statutory mandatory minimum consecutive term of five years' imprisonment; that in exchange for that plea, the Government agreed to dismiss the three remaining charges; and that "[t]here [were] no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in th[at] Plea Agreement and none [would] be entered into unless executed in writing and signed by all parties." (Case No. 3:07cr79, Doc. No. 38 at 1-2). Furthermore, Petitioner's sworn representations to the Court establish that he was aware of the sentence that he faced upon his conviction for the § 924(c) charge, he knowingly and freely tendered his guilty plea because he, in fact, was guilty of that offense, he wanted the Court to accept his plea, and he understood and agreed to the terms of his Plea Agreement. (Id., Doc. No. 39 at   ). Consequently, the record evidence reflects that Petitioner's claim of an unlawful inducement is factually baseless.

2.   **Petitioner's allegations that counsel failed adequately to investigate and research his case and to negotiate for different terms is legally baseless**.

By his final two allegations against counsel, Petitioner essentially alleges that because counsel did not show him the discovery and other evidence which established his guilt to the § 924(c) charge, counsel must not have adequately investigated and researched his case in order to discover that the facts were insufficient to prove that he possessed the firearm in furtherance of a drug offense; and he alleges that counsel failed to negotiate an agreement that would not have required a plea to that charge. (Doc. No. 1 at 15-22). Respondent counters that these allegations are not supported by any facts; the allegations are rebutted by counsel's Affidavit; the circumstances involving the discovery of the subject firearm establish Petitioner's guilt; counsel's efforts ultimately secured a plea arrangement that resulted in Petitioner's having received a sentence that was far below the term to which he was exposed; and that Petitioner

12

cannot establish any prejudice on these allegations. (Doc. No. 6 at 16-21).

As the Court previously noted, when evaluating claims of ineffective assistance following the entry of a guilty plea, the petitioner must establish that a decision to reject the Government's plea offer would have been a rational one under the circumstances. Padilla, supra, 130 S.Ct. at 1473. Here, Petitioner was facing five separate charges, to wit: a drug conspiracy charge involving at least 1,000 kilograms of marijuana; two substantive charges of possession with intent to distribute marijuana, one of which allegedly involved at least 100 kilograms; a charge of possession of a firearm by a convicted felon; and a charge of possessing a firearm during and in relation to the drug trafficking crimes set forth in Counts One and Two. (Criminal Case No. 3:07cr79, Doc. No. 21).

Petitioner does not challenge his guilt as to any charge besides the § 924(c) offense. (Doc. No. 1-8 ). Furthermore, the evidentiary forecast gleaned from Petitioner's PSR reflects that the Government's evidence showed that on March 19, 2007, federal authorities searched a warehouse which Petitioner leased and found Petitioner and a co-conspirator along with over 2,000 pounds of marijuana, more than $21,000 in cash and other tools of the drug trafficking business. (Criminal Case No. 3:07cr79, Doc. 327 at 5). The PSR further reflects that authorities searched Petitioner's home and discovered about two ounces of marijuana, $83,000 in cash and the shotgun at issue here. (Id. at 6). Ledgers that were found at the warehouse detailed Petitioner's involvement with an additional 1,000 pounds of marijuana in prior transactions, for a total of 1,410.696 kilograms of marijuana. (Id.). Based upon this information, there is a great likelihood that Petitioner would have been convicted of the four unchallenged charges, would have faced an advisory Guidelines range of at least 151 to 188 months imprisonment solely for the drug charges, and a concurrent term of imprisonment for the felon-in-possession conviction.

13

Courts have stated that the inquiry as to whether a reasonable defendant would have insisted upon a trial is an "objective one based on whether going to trial might reasonably have resulted in a different outcome." Martin v. United States, 395 F.Supp. 2d 326, 329 (D. S.C. 2005). See also Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice under the modified "reasonable probability" standard). In the instant case, there is little if any likelihood that Petitioner would have obtained a more favorable outcome had he proceeded to trial. Indeed, even if Petitioner had managed to avoid a conviction on the § 924(c) charge, he still likely would not have obtained a lower sentence than the 78-month term which he ultimately received.

Finally, as to the § 924(c) charge, while Petitioner contends that he did not possess the firearm in furtherance of his conspiracy offense, that fact is irrelevant inasmuch as the Indictment charged him with possessing it in furtherance of both the conspiracy and the possession-with-intent-to-distribute-marijuana offenses. See United States v. Crump, 120 F.3d 462, 466 (4th Cir. 1997) (noting that there is no requirement that the Government identify the drug trafficking activity on which the § 924(c) charge is based).

Moreover, the Government has submitted evidence to establish, contrary to Petitioner's reports, that firearm was found in Petitioner's closet along with a coat containing $83,000 in cash, and was underneath a bag containing a distribution quantity of marijuana (two ounces). (Doc. Nos. 7, 8 and 9: Photographs of crime scene and DEA Report of Investigation – each reflecting that firearm was found with marijuana and money). In United States v. Lomax, 293 F.3d 701 (4th Cir. 2002), the Fourth Circuit adopted a series of factors for evaluating whether a firearm was possessed in furtherance of a drug trafficking crime. Id. at 705. These factors

14

include, but are not limited to: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." Id.

Using the Lomax factors, it is likely that the Government also would have been able to convict Petitioner of the § 924(c) charge. As was noted, Petitioner was in possession of a distribution quantity of marijuana and was involved in a large-scale marijuana distribution network. As a convicted felon, he did not lawfully possess the firearm. The firearm was located near the drugs and the drug proceeds. And, the firearm was accessible to Petitioner. See United States v. Manigan, 592 F.3d 621, 629 (4th Cir. 2010) (observing that "so long as a firearm's 'location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapon [] to the offense conduct'") (quoting United states v. Corcimiglia, 967 F.2d 724, 727 (1st Cir. 1992)); and United States v. Milbourne, 129 F. App'x 861, 867 (4th Cir. May 11, 2005) (affirming § 924(c) conviction for a convicted felon on evidence of 11.5 grams of marijuana found in jacket in defendant's girlfriend's bedroom, and the loaded 9 millimeter semiautomatic pistol was found between the mattress and box spring of the girlfriend's bed). In sum, the available evidence would have allowed a rational trier of fact to find the essential elements of a § 924(c) offense beyond a reasonable doubt. Lomax, supra, 293 F.3d at 705. Upon his conviction at trial, Petitioner would have been subject to a mandatory minimum term of five years' imprisonment in addition to the 151 to 188-month term that he would have faced for the drug convictions.

On this record, there is absolutely no evidence upon which the Court can be persuaded

15

that a decision to reject the Government's plea offer would have been a rational choice under the circumstances. As such, Petitioner cannot demonstrate that he was prejudiced by defense counsel's investigation of this charge nor by his negotiation of the subject Plea Agreement. Therefore, these allegations are legally baseless and this entire claim must be rejected.

## IV. CONCLUSION

Petitioner has failed to forecast any evidence to show that there is of a genuine issue of material fact to be resolved in a trial or that he is entitled to relief on any of his claims. Accordingly, Respondent's Motion for Summary Judgment will be granted, and Petitioner's Motion to Vacate will be denied and dismissed.

## V. ORDER

**IT IS, THEREFORE, ORDERED THAT:**

1. Respondent's Motion for Summary Judgment (Doc. No. 11) is **GRANTED**;

2. Petitioner's Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. No. 1) is **DENIED** and **DISMISSED;** and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has failed to make a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong) (citations omitted).

**SO ORDERED**.

Signed: March 28, 2011

*Frank D. Whitney*
Frank D. Whitney
United States District Judge